IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **SHOPIFY INC.**, a Corporation organized under the laws of Canada,<br><br>        Plaintiff,<br><br>        v.<br><br>**JOHN DOE 1** (a.k.a. Sacha Go, a.k.a. Sacha Ghosh), an individual,<br><br>        Defendant. | **Case No.**: 23-cv-9102<br><br>**COMPLAINT FOR VIOLATION OF THE DIGITAL MILLENNIUM COPYRIGHT ACT - 17 U.S.C. § 512(f)**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Shopify Inc. ("Shopify") hereby alleges for its Complaint against Defendant John Doe 1 (a.k.a. Sacha Go, a.k.a. Sacha Ghosh) on personal knowledge as to its own actions and on information and belief as to the activities of others, as follows:

## NATURE OF ACTION

1. Defendant Doe has repeatedly harassed, and continues to harass, Shopify merchants and Shopify itself through knowingly false allegations of copyright infringement. This lawsuit seeks to halt that misconduct and hold him accountable for the damage he has caused.

2. In 1998, Congress enacted the Digital Millennium Copyright Act, 17 U.S.C. § 512 (the "DMCA"), to provide a framework for addressing claims of online copyright infringement. In general, the DMCA immunizes online service providers from claims of copyright infringement based on materials uploaded to the services by users, if the services promptly remove allegedly infringing materials upon receipt of "takedown notices" from copyright holders. Through these notices, the content of which is statutorily prescribed, copyright holders are able to secure the prompt removal of allegedly infringing materials from

online services without the need to prove a claim of infringement in court. Indeed, where a takedown notice meets the statutory requirements, a service provider must expeditiously remove alleged infringing content in order to claim the DMCA's immunity. Service providers thus have strong incentives to promptly remove content identified in facially valid takedown notices. Users that receive takedown notices that the user contends are incorrect, may file a prescribed counter notification and have the disputed content restored, but only after a two-week waiting period.

3. The DMCA's notice and counter-notice approach, and in particular the statute's mandate of expeditious removal and delayed restoration of content, has made the statute ripe for abuse. A malicious actor, like Doe, can send takedown notices making bogus claims of infringement and thereby secure the removal (at least temporarily) of content to which they object or content with which they compete.

4. Congress was aware that takedown notices could be abused to secure the removal of perfectly legitimate content. Accordingly, it included a provision in the DMCA authorizing those aggrieved by false notices to bring an action against the sender for damages. This is such an action.

5. Defendant Doe has sent Shopify dozens of DMCA takedown notices littered with misrepresentations, claiming that materials Shopify merchants have posted to their online stores supposedly infringe Doe's copyrights. But Doe does not actually own any of the copyrights to which he claims ownership in these notices. Indeed, much, if not all, of the information Doe has supplied in the notices is false, and Doe has submitted them to Shopify as part of a scheme to harm Shopify merchants and Shopify itself.

**PARTIES**

6. Plaintiff Shopify is a corporation organized under the laws of Canada, with its headquarters in Ottawa, Ontario, Canada. Shopify is a cloud-based, e-commerce platform enabling all manner of merchants to operate and promote their businesses online.

7. Defendant Doe 1 is an individual who has referred to himself as Sacha Go and/or Sacha Ghosh in dozens of takedown notices Doe sent to Shopify. Shopify, however, does not know Doe's true identity because of the volume of patently false information contained in the notices. Indeed, the Manhattan address Doe has supplied in many of the takedown notices he sent, does not exist. Shopify will seek discovery to identify Doe, serve him with process, and amend the complaint to identify Doe by his true name.

**JURISDICTION AND VENUE**

8. The Court has original and exclusive jurisdiction for this matter under 28 U.S.C. § 1338. This is a civil action arising under an Act of Congress governing copyrights, specifically under 17 U.S.C. § 512(f) of the Copyright Act.

9. Venue in this judicial district is proper under 28 U.S.C. § 1400(a). This is the district in which Doe has claimed to reside in many of the DMCA takedown notices he sent to Shopify.

**BACKGROUND**

Shopify and its DMCA Processes

10. Shopify is a provider of online services. It offers a platform to millions of merchants through which the merchants can operate online storefronts. Merchants upload content for those storefronts to Shopify's network. Shopify hosts that content and makes it available to the online world. Shopify is thus a "service provider" as defined by the DMCA.

11. In accordance with the DMCA, Shopify has registered an agent with the United States Copyright Office to receive notices of alleged infringement from copyright holders.

12. If a copyright holder believes that a merchant has uploaded to the Shopify platform content that infringes their copyright, they may invoke the DMCA's procedures by sending a takedown notice to Shopify's registered agent detailing the alleged infringement. To facilitate the submission of takedown notices, Shopify allows any copyright holder with a Shopify account to access a form on the Shopify website at https://help.shopify.com/en/legal/dmca#/login, where they can easily input the information the DMCA requires for a valid takedown notice (17 U.S.C. § 512(c)(3)(A)):

(i) Information reasonably sufficient to permit the service provider to contact the complaining party, such as an address, telephone number, and, if available, an electronic mail address at which the complaining party may be contacted;

(ii) Identification of the copyrighted work claimed to have been infringed, or, if multiple copyrighted works at a single online site are covered by a single notification, a representative list of such works at that site;

(iii) Identification of the material that is claimed to be infringing and information reasonably sufficient to permit the service provider to locate the material;

(iv) A statement that the complaining party has a good faith belief that use of the material in the manner complained of is not authorized by the copyright owner, its agent, or the law;

      (vi)    A statement that the information in the notification is accurate, and under penalty of perjury, that the complaining party is authorized to act on behalf of the owner of an exclusive right that is allegedly infringed; and

      (vii)    A physical or electronic signature of a person authorized to act on behalf of the owner of an exclusive right that is allegedly infringed.

13.    As the host of millions of online storefronts from merchants all over the world, Shopify receives thousands of DMCA takedown notices each month. Shopify invests heavily in engineering, customer support and computer systems to process these notices. In the vast majority of cases, when Shopify receives a notice that substantially complies with the requirements for a DMCA takedown notice, it promptly disables access to the allegedly infringing material. For Shopify merchants, that may mean that they can no longer sell allegedly infringing products through their storefronts, or use allegedly infringing content to promote sales.

14.    If a Shopify merchant disputes a takedown notice, it can object through submission of a counter notification to Shopify's DMCA agent. But under the DMCA, that does not cause the immediate restoration of the disputed content. Rather, to obtain the DMCA's protections, Shopify must typically wait two weeks following receipt of a counter notification before permitting the content to return to the platform. In the interim, the disputed takedown notice can deprive the Shopify merchant of the ability to sell products or use content.

15.    Under certain circumstances, a takedown notice can even result in the complete termination of a merchant's online store. Like all DMCA service providers, Shopify is required to implement a policy under which those who are "Repeat Infringers" lose access to the platform. Under Shopify's policy, a takedown notice results in a "strike," and an accumulation of strikes over time results in termination. A merchant that receives a takedown notice may submit a

counter notice and lift the strike. But for unsuspecting merchants who may be unfamiliar with the DMCA, a sudden onslaught of takedown notices can result in the termination of their entire store under Shopify's repeat infringer policy.

## Abuse of the DMCA Takedown Process

16. Given the volume of takedown notices Shopify receives, it is not feasible for it to investigate the bona fides of each one. Instead, as is common among service providers, Shopify relies on a mix of both human and automated review. Shopify trusts that the DMCA's prohibition on misrepresentation in takedown notices will limit fraudulent notices.

17. Unfortunately, unscrupulous individuals are increasingly seeking to exploit the DMCA takedown process for anti-competitive purposes or reasons of animus. These individuals know that service providers like Shopify promptly remove allegedly infringing content in response to DMCA takedown notices, that they assess strikes to the alleged infringers, and that they terminate the accounts of users who accumulate strikes. With that knowledge, these individuals send seemingly valid, but bogus takedown notices causing the removal of legitimate products and sometimes the termination of entire stores. While Shopify works to prevent this sort of abuse, and it promptly honors valid counter notices, it may be unable to prevent real harm to merchants in the face of determined attacks.

## Doe's Illegal Behavior

18. Doe sent dozens of fraudulent takedown notices to Shopify, targeting the stores of at least twenty merchants, all of whom sell perfume products.

19. On October 5, 2023, Doe created a Shopify account under the name "Sacha Go," giving Shopify the email address "sachaghosh@outlook.com." On October 6, 2023, Doe created a second Shopify account under the name "Sacha Ghosh," supplying the email address

"macinalab@skiff.com." On October 13, 2023, Doe created a third Shopify account under the name "Sacha Ghosh," supplying the email address "sachaghosh1@outlook.com." Doe confirmed that he actually controlled these email addresses by responding to email inquiries that Shopify sent to each.

20. Immediately after creating these Shopify accounts, Doe accessed the Shopify webform and through it submitted dozens of DMCA takedown notices to Shopify. In those notices, he averred that materials uploaded by the perfume merchants to specific webpages hosted by Shopify violated his copyrights.

21. Doe's notices of alleged infringement included all of the representations the DMCA requires. Doe identified himself as the copyright owner, provided a link to what he claimed was his copyrighted work, and identified specific links to what he claimed was allegedly infringing content posted by the Shopify merchants. He professed a good faith belief that the merchants' use of the copyrighted material was not authorized. He then swore, "under penalty of perjury, that I am the copyright owner or am authorized to act on behalf of the owner of an exclusive right that is allegedly infringed." And, he attested that all of the information provided in each takedown notice was accurate.

22. But, the content of the DMCA takedown notices belies Doe's claim of accuracy. Doe claimed copyright ownership over a fluctuating catalog of perfume-related content, with his claims in one notice contradicted by claims in another. And whether to evade detection, or for his amusement, Doe supplied a variety of patently bogus phone numbers and mailing addresses.

23. For example, between October 5 and October 13, 2023, Doe sent at least ten DMCA takedown notices to Shopify, claiming that he held copyrights on content in the "Pheromone Perfume" Shopify store. His notices accused various other perfume merchants of

infringing these copyrights, including a store called "Glowee Shop." In each of his notices, Doe provided contact information, including a phone number (801-339-8355) and a mailing address ("442 Cingston Street, West Manhattan, NYC"). There is no Cingston Street in New York City, nor is there a "West Manhattan" postal address.

24. But, during this same period, Doe simultaneously claimed a copyright interest in content on the Glowee Shop—the very material that he alleged infringed his copyrights in the first group of notices. In these notices, Doe provided different contact information, including a different phone number (374-397-5935) and different addresses ("349 St Westy" and "492 St Road"). His notices accused at least two Shopify merchants of infringing his copyrights, including another perfume store operated by a merchant called "Venom Scents."

25. It gets worse. Doe was also sending takedown notices to Shopify claiming ownership of content on the Venom Scents store. In these, Doe targeted at least twelve other Shopify perfume merchants. He provided a dizzying diversity of supposed contact information in the notices, including a host of different phone numbers (374-397-5935; 2-837-244-3452; 354928524) and mailing addresses ("35 St Road"; "75A St Road"; "345 St Road"; "346 St Road"; "347 St Road"; "364 St Road"; "374 St Road"; "384 St Road"; "2452 St Word").

26. Doe sent more than 70 DMCA takedown requests to Shopify from October 5 to October 13, 2023, accusing at least twenty perfume merchants of copyright infringement through false and increasingly conflicting claims of copyright ownership. Those takedown notices were fraudulent. Virtually every one of the representations made in the notices were knowingly false. Neither "Sacha Go" or "Sacha Ghosh" is Doe's real name. The contact information provided in the notices is bogus. Doe does not own the copyrights that he claimed to own in the notices. His

8

Case 1:23-cv-09102 Document 1 Filed 10/16/23 Page 9 of 11

assertions of infringement are false and his assertions of authorization "under penalty of perjury" were perjurious.

27. Doe knew all of these assertions were false when he made them. Shopify, however, did not. Before it learned of Doe's scheme, Shopify processed many of his takedown notices, removing the allegedly infringing content and assessing strikes to the accused merchants. In total, Shopify removed dozens of products from its platform and assessed 52 strikes to merchants.

28. On or around October 12, 2023, one of the affected merchants alerted Shopify to Doe's illicit conduct. Shopify conducted an investigation that began to reveal the scope of Doe's falsehoods. Shopify allowed reinstatement of the affected products and reversed the imposition of strikes for all affected merchants. Those efforts cost Shopify tens of thousands of dollars in personnel time and resources. The loss of goodwill that Shopify suffered from penalizing innocent merchants cannot be quantified.

## FIRST CAUSE OF ACTION

### Violation of 17 U.S.C. § 512(f)

29. Shopify realleges each and every allegation set forth in paragraphs 1 through 28, inclusive, and incorporates them by reference herein. As the service provider that received Doe's bogus notifications of alleged infringement, Shopify relied upon Doe's knowingly false misrepresentations, removing or disabling access to the material Defendant falsely claimed to be infringing.

30. Doe's abusive behavior has caused Shopify to expend substantial sums on its investigation to detect and halt that behavior, and on efforts to ensure that its merchants do not suffer adverse consequences from it.

31.     Even if Shopify terminates Doe's existing accounts (and it has already suspended use of those accounts), Doe may create new accounts and continue sending fraudulent takedown notices through them, or utilize alternative means for transmitting such notices.  Injunctive relief preventing future misconduct is necessary to prevent irreparable harm to Shopify in the form of lost customer goodwill.  Accordingly, Shopify prays for the relief set forth below.

## PRAYER FOR RELIEF

Shopify prays for judgment against Doe 1 as follows:

a) For an award of compensatory damages in an amount to be proved at trial arising from Doe's violation of 17 U.S.C. § 512(f);

b) For an award of its costs and reasonable attorneys' fees pursuant to 17 U.S.C. § 512(f);

c) For preliminary and permanent injunctive relief barring Doe and all those in active concert with him from submitting notices of alleged infringement to Shopify that misrepresent that material on the Shopify service is infringing copyrights held or claimed to be held by Doe or anyone he claims to represent.

d) For such other, further, and different relief as the Court deems proper under the circumstances.

## DEMAND FOR JURY TRIAL

Shopify requests a trial by jury.

DATED:  October 16, 2023　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　<u>s/ *Jeremy Auster*</u>
　　　　　　　　　　　　　　　　　　　Jeremy Auster, Bar No. 5539101
　　　　　　　　　　　　　　　　　　　WILSON SONSINI GOODRICH & ROSATI, P.C.
　　　　　　　　　　　　　　　　　　　1301 Avenue of the Americas, 40th Floor
　　　　　　　　　　　　　　　　　　　New York, NY 10019
　　　　　　　　　　　　　　　　　　　Tel: 212-999-5800
　　　　　　　　　　　　　　　　　　　jauster@wsgr.com

　　　　　　　　　　　　　　　　　　　*Counsel for Plaintiff*
　　　　　　　　　　　　　　　　　　　Shopify Inc.