IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **SHOPIFY INC.**, a Corporation organized under the laws of Canada, <br><br>  Plaintiff, <br><br> v. <br><br> **JOHN DOE 1** (a.k.a. Sacha Go, a.k.a. Sacha Ghosh), **JOHN DOE 2** (a.k.a. Daniel Monnier), and **JOHN DOE 3** (a.k.a. Ad Anjum), individuals, <br><br>  Defendants. | Case No. 1:23-cv-09102-KPF-KHP |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS *EX PARTE* MOTION
FOR LEAVE TO TAKE EXPEDITED DISCOVERY**

**INTRODUCTION**

Shopify Inc. ("Shopify") is a leading e-commerce platform that allows millions of merchants around the world to operate online stores. Defendant Does 1, 2, and 3 (collectively, "Defendants") are unidentified individuals who have made a series of intentional misrepresentations to Shopify in submitting copyright takedown notices in violation of 17 U.S.C. § 512(f) of the Digital Millennium Copyright Act (the "DMCA"). In this case, Shopify seeks redress for the harm that Defendants' unlawful activity has caused.

Defendants have misrepresented their identities to Shopify. To identify the perpetrators and serve them with the summons and complaint, Shopify asks that the Court grant it leave to conduct early discovery.

**FACTUAL BACKGROUND**

**A.    The DMCA**

In 1998, Congress enacted the DMCA to provide a framework for addressing claims of online copyright infringement. 17 U.S.C. §§ 512 et seq. In general, the DMCA immunizes online service providers from claims of copyright infringement based on materials uploaded to the services by users, if the service providers promptly remove allegedly infringing materials upon receipt of "takedown notices" from copyright holders. *Id.* § 512(c). Where a takedown notice meets the statutory requirements, a service provider must expeditiously remove alleged infringing content to claim the DMCA's immunity. *Id.* §§ 512(c)(1)(A)(iii), (c)(1)(C).

Congress was aware that takedown notices could be used to effect the removal of legitimate content, and provided recourse to those that contend that notices of alleged infringement are incorrect. Any user believing that their content has been incorrectly removed through a takedown notice may file a prescribed counter notice and have the disputed content

restored after a ten- to fourteen-day waiting period. *Id.* § 512(g)(2). But counter notices alone do not sufficiently deter takedown notices that are intentionally wrongful or sent in bad faith. For example, a merchant may send bogus takedown notices targeting competitors' content, not based on any legitimate infringement claim, but rather to cause the removal of the competitors' content and gain a market advantage. While the affected competitor may submit a counter notice, its sales may be disrupted for weeks. Such misconduct harms the competitor, consumers, and often the online service hosting the competitors' content as the service must expend resources to address the DMCA abuse.

To better deter such harms, the DMCA authorizes any party aggrieved by a knowing misrepresentation in a takedown notice to bring an action for damages. *Id.* § 512(f). This is such an action.

B. **Shopify's Compliance with the DMCA**

Shopify is a cloud-based e-commerce platform enabling all manner of merchants to operate and promote their businesses online. First Amended Complaint (ECF No. 8, "FAC") ¶ 6. Merchants can create online stores on Shopify's platform, and upload content to Shopify's platform, which Shopify hosts and makes available online. *Id.*

Shopify is a "service provider" as defined by the DMCA, and complies with the statute's notice-and-takedown provisions in all material respects. *Id.* ¶¶ 6, 13-18. When Shopify receives a takedown notice that substantially complies with the DMCA's requirements, it promptly disables access to the allegedly infringing material. *Id.* ¶ 16. As such, DMCA takedown notices may prevent Shopify merchants from selling allegedly infringing products through their online stores for at least a time. A merchant who accumulates DMCA takedown notices may suffer the termination of its entire store. *Id.* ¶¶ 16-18.

### C. Defendants' Illegal Activity

The Doe Defendants are individuals who have registered with Shopify under various fake names, so far identified as: Sacha Go and/or Sacha Ghosh for Doe 1 (FAC ¶ 22); Daniel Monnier for Doe 2 (*id.* ¶¶ 33, 40); and Ad Anjum for Doe 3 (*id.* ¶¶ 43, 45, 48). For months, Defendants have collectively sent hundreds of DMCA takedown requests to Shopify. *Id.* ¶¶ 5, 29, 39, 49. In compliance with the DMCA, Shopify processed these takedown requests, and removed hundreds of products from its platform. *Id.* ¶¶ 30, 39, 49.

While the takedown notices included all of the representations required by the DMCA, *id.* ¶¶ 24, 38, 44, subsequent investigation revealed that Defendants' takedown requests contained all manner of misrepresentations. Defendants lied about their identities, their addresses, their supposed copyrights, and the supposed infringements. *Id.* ¶¶ 26-28, 34-36, 45-47.[1] These lies were in service of anti-competitive schemes to cause the wrongful removal of products that competed with Defendants' own. *Id.*

Once these facts came to light, Shopify worked to reinstate the products affected by Defendants' fraudulent takedown notices and limit further abuse. *Id.* ¶ 51. Those efforts cost Shopify tens of thousands of dollars in personnel time and resources, and an unquantifiable loss in goodwill for penalizing innocent merchants. *Id.*

---

[1] Defendant Doe 1 adopted different monikers ("Sacha Go" and "Sacha Ghosh") and claimed to reside in various addresses that do not exist, including "442 Cingston Street, West Manhattan, NYC." FAC ¶¶ 22, 26. Defendant Doe 2 provided a host of false mailing addresses, including "136 Alpha Avenue" and "154 East Mich Road." *Id.* ¶ 37. Defendant Doe 3 operates under a fake name ("Ad Anjum") and claimed to reside in Kot Chutta, Pakistan, but did not provide a specific mailing address. *Id.* ¶¶ 9, 43.

3

### D. Defendants' Email Addresses

Defendants web of false identities and fake contact information has made it impossible for Shopify to identify Defendants without the benefit of discovery. *See* Declaration of Emily Hammond In Support of Shopify's *Ex Parte* Motion ("Decl.") ¶ 5. What Shopify does know is that each Defendant controls specific email addresses corresponding to Shopify accounts that the Defendants registered, as each Defendant verified their email: Defendants Doe 1 (sachaghosh@outlook.com; macinalab@skiff.com; sachaghosh1@outlook.com), Doe 2 (danielcmonnier@skiff.com), and Doe 3 (aad220559@gmail.com). FAC ¶¶ 22, 33, 43; Decl. ¶ 6. Shopify seeks permission to conduct limited discovery in the hopes of identifying the persons behind these email addresses so that it can properly name them in its pleadings and properly serve them in the case. FAC ¶ 10; Decl. ¶ 7; *see* Exhibits 1-3 (sample subpoenas to Microsoft, Google, and Skiff).

## ARGUMENT

### I. SHOPIFY REQUIRES EXPEDITED DISCOVERY TO SERVE ITS FIRST AMENDED COMPLAINT

The Federal Rules allow a party to engage in discovery before a Rule 26(f) conference if authorized by a court order. Fed. R. Civ. P. 26(d)(1). When considering whether to grant discovery prior to a Rule 26(f) conference, courts generally apply a "flexible standard of reasonableness and good cause." *UN4 Prods. v. Doe*, No. 17 Civ. 4887, 2017 U.S. Dist. LEXIS 172773, at *2 (E.D.N.Y. Oct. 18, 2017) (citing *Digital Sin, Inc. v. John Does 1-176*, 279 F.R.D. 239, 241 (S.D.N.Y. 2012)).

Specifically, in evaluating discovery requests for third-party subpoenas seeking Doe defendants' identities, the Second Circuit examines the following "principal factors:"

> (1) [the] concrete[ness of the plaintiff's] showing of a prima facie claim of actionable harm, . . . (2) [the] specificity of the discovery request, . . . (3) the

4

> absence of alternative means to obtain the subpoenaed information, . . . (4) [the] need for the subpoenaed information to advance the claim, . . . and (5) the [defendant's] expectation of privacy.

*Arista Records, LLC v. Doe 3*, 604 F.3d 110, 119 (2d Cir. 2010) (quoting *Sony Music Ent., Inc. v. Does 1-40*, 326 F. Supp. 2d 556, 564-65 (S.D.N.Y. 2004)); *Strike 3 Holdings, LLC v. Doe*, No. 21 Civ. 3963, 2021 U.S. Dist. LEXIS 90758 (S.D.N.Y. May 12, 2021) (Failla, J.) (finding good cause to serve an expedited third-party subpoena to identify Doe defendant). All of these factors are satisfied.

  **A.  Shopify Has Made a Prima Facie Claim of Actionable Harm.**

  Shopify has asserted a compelling case of misrepresentation and harm under the DMCA. To state a claim under Section 512(f), Shopify must plead that a defendant "(1) knowingly misrepresented to [Shopify] that [a third party] was posting content in violation of the defendant's purported copyrights to that content; (2) that, relying on that defendant's willful misrepresentation, [Shopify] removed or disabled access to the [content] in question; and (3) that, as a result of the aforementioned series of events, [Shopify] has incurred damages." *White v. Umg Recordings, Inc.*, No. 20 Civ. 9971, 2022 U.S. Dist. LEXIS 228715, at *9 (S.D.N.Y. Aug. 16, 2022). Shopify's complaint in this action easily satisfies those requirements.

  <u>*Defendants' Notices Contained Knowing Misrepresentations*</u>: Defendants proffered knowing misrepresentations of third-party infringement in dozens of takedown requests. These takedown requests falsely stated that Defendants owned copyright in material that they did not own, and baselessly accused third-party Shopify merchants of infringing those copyrights. FAC ¶¶ 25-29, 34-36, 45-46, 48. Further, Defendants knew that these representations were false. *Id.* ¶¶ 30, 40, 45-48. To support these allegations, the First Amended Complaint provides examples of these knowingly false takedown notices. For example, Doe 1's claims of copyright ownership are patently contradictory; he accused a perfume merchant of infringement in one notice, only to

claim in a subsequent notice a copyright interest in the very material from that perfume merchant he accused of infringement. *Id.* ¶¶ 26-28. Doe 2 claimed to own copyright in a password-protected storefront that contained no copyrighted material, and shamelessly accused Shopify merchants of infringing this empty storefront. *Id.* ¶ 34. Doe 3 claimed copyright ownership over content on the website at a website, Cernucci.com, and accused third-parties of infringing it, but the IP owner listed by Doe 3 in the takedown notice told Shopify that they were not authorized to act on behalf of that site, and did not recognize the notice. *Id.* ¶¶ 45-47. To avoid detection, these Defendants hid behind fake names, bogus addresses, and false phone numbers. *Id.* ¶¶ 7-9, 22, 26-28, 33, 37, 43.

*Defendants' Notices Prompted Removals by Shopify*: In reliance on Defendants' fraudulent takedown notices, Shopify removed or disabled the content that Defendants claimed was infringing. *Id.* ¶¶ 30, 39, 49. The takedown notices appeared technically complete on their face, so Shopify processed many of them, removed the allegedly infringing content, and assessed strikes to the accused merchants. *Id.* ¶¶ 24, 30, 38-39, 44, 49. In total, Shopify removed hundreds of products from its platform in reliance on Defendants' false statements. *Id.*

*Defendants' Notices Harmed Shopify*: As a direct and proximate result of Defendants' misrepresentations in their takedown notices, Shopify incurred substantial damages. Shopify's efforts to process, investigate, and subsequently reverse Defendants' fraudulent takedown notices have thus far cost Shopify "tens of thousands of dollars in personnel time and resources." *Id.* ¶ 51. The "loss of goodwill that Shopify suffered from penalizing innocent merchants" is incalculable and ongoing. *Id.* Under these facts, Shopify is the prototypical victim of a Section 512(f) violation and has pled a prima facie showing of harm under the DMCA. *See Online Policy Grp. v. Diebold, Inc.*, 337 F. Supp. 2d 1195, 1205 (N.D. Cal. 2004); *Automattic Inc. v.*

*Steiner*, 82 F. Supp. 3d 1011 (N.D. Cal. 2015) (awarding roughly $25,000 in damages to online service harmed by bogus notices).

      **B.    Shopify Has Identified the Limited and Specific Information Needed to Identify and Serve Defendants.**

The discovery Shopify seeks to undertake is limited and specific. *See Arista Records*, 604 F.3d at 119. A request is sufficiently specific when it seeks information "associated with the defendant's IP address," such as the "name and address of the subscriber" and related information. *Strike 3 Holdings, LLC v. Doe*, No. 18 Civ. 5586, 2018 U.S. Dist. LEXIS 180062, at *1 (S.D.N.Y. Oct. 15, 2018); *John Wiley & Sons, Inc. v. Doe*, 284 F.R.D. 185, 190 (S.D.N.Y. 2012). Such information is needed to accomplish a specific end: "to advance Plaintiff to the service of process stage." *Strike 3 Holdings, LLC v. Doe*, No. 19 Civ. 5818, 2019 U.S. Dist. LEXIS 185309, at *8 (S.D.N.Y. Oct. 9, 2019). In the attached subpoenas, Shopify seeks similarly limited information. Principally, it requests specific identifying information, namely a mailing address or billing information, associated with the email addresses the Defendants used with Shopify. Recognizing that that information might itself have been inaccurate or fraudulent, Shopify also asks the email providers to supply IP address information—that is, a list of the unique Internet addresses from which Defendants communicated with the email providers in setting up and using their email accounts. With that information, Shopify can seek identifying information on Defendants from the Internet service providers that Defendants used. *See Strike 3 Holdings*, 2018 U.S. Dist. LEXIS 180062, at *1.

      **C.    There Are No Alternative Means to Obtain the Subpoenaed Information.**

Shopify's knowledge of the Defendants' identities is limited to the email addresses that they used to register a Shopify account. Shopify has confirmed that Defendants do, in fact, control these email addresses. FAC ¶¶ 22, 33, 43; Decl. ¶ 6. But the other information the

7

Defendants provided to Shopify (names, addresses, phone numbers) is false or insufficiently specific to identify the Defendants. FAC ¶¶ 9, 26-29, 37; Decl. ¶ 5.

Given this limited information, subpoenas to the Defendants' email service providers is the only readily apparent means for Shopify to identify the Defendants.  *See BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, 881 F.3d 293, 299 (4th Cir. 2018) ("[o]nly" a service provider can match a subscriber's address to the subscriber's identity); *Next Phase Distrib., Inc. v. John Does 1-27*, 284 F.R.D. 165, 171-72 (S.D.N.Y. 2012); *In re Malibu Media Adult Film Copyright Infringement Cases*, No. 15 Civ. 1855, 2015 U.S. Dist. LEXIS 74125, at *12-13 (E.D.N.Y. June 8, 2015).  There is no guarantee that such subpoenas, in and of themselves, will be sufficient.  But the information they yield may warrant further investigation or discovery.

### D.  The Subpoenaed Information Is Necessary to Advance Shopify's Claim

Shopify cannot serve Defendants without first ascertaining Defendants' names and addresses.  As a sister court explained in a similar context, "[a]scertaining the identities and residences of the Doe defendants is critical to plaintiffs' ability to pursue litigation, for without this information, plaintiffs will be unable to serve process." *Sony Music*, 326 F. Supp. 2d at 566.  And without service, Shopify cannot pursue the redress to which it is entitled.  *Malibu Media, LLC v. Doe*, No. 14 Civ. 4808, 2016 U.S. Dist. LEXIS 118328, at *22 (E.D.N.Y. Aug. 23, 2016) ("Without learning the Defendant's identity and address, the Plaintiff will be unable to serve process and pursue its claim." (citation omitted)).  Absent early discovery, Defendants' efforts to cloak themselves in anonymity will be rewarded and they will escape responsibility for their actions.

**E.     Defendants' Minimal Privacy Interest Is Substantially Outweighed by Plaintiff's Interest in Protecting Itself and Its Users from Fraud.**

The Second Circuit has found subscribers do not have a "legitimate privacy interest" in the ownership of their email address. *United States v. Ulbricht*, 858 F.3d 71, 84, 97 (2d Cir. 2017) (agreeing with the majority trend in Circuit Courts of Appeals); *see also Sony Music*, 326 F. Supp. 2d at 566–67 (finding plaintiff "entitled to discovery in light of" defendant's minimal interest). Without a legitimate claim to privacy, "Plaintiff's interest in learning [Defendants'] name and address outweighs [Defendants'] privacy interest." *Strike 3 Holdings, LLC v. Doe*, No. 23 Civ. 4359, 2023 U.S. Dist. LEXIS 148972, at *4 (S.D.N.Y. Aug. 22, 2023).

## CONCLUSION

All of the factors that courts consider in assessing the propriety of early discovery weigh in favor of granting Shopify's request here. Accordingly, Shopify asks that the Court permit it to serve the accompanying subpoenas seeking Defendants' identities.

Dated: December 8, 2023          Respectfully submitted,

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

s/ *Jeremy Auster*
Jeremy Auster, Bar No. 5539101
1301 Avenue of the Americas, 40th Floor
New York, New York 10019
Telephone: (212) 999-5800
Facsimile: (866) 974-7329
Email: jauster@wsgr.com

*Counsel for Plaintiff Shopify Inc.*